

ORIGINAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS, DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUL 16 2001

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

| | |
|---|---|
| **DR. ALLEN J. ZARNOW** | § |
| | § |
| **PLAINTIFF,** | § |
| | § |
| **VS.** | § |
| | § |
| **CITY OF WICHITA FALLS, TEXAS;** | § |
| **CHIEF KEN COUGHLIN;** | § |
| **MAJOR TODD** | § |
| **LT. J. CUMMINGS;** | § |
| **SGT. ROGER KENDALL;** | § |
| **SGT. KISINGER;** | § |
| **BOBBY DILBECK;** | § |
| **DENNIS KEETHLER;** | § |
| **RICK ESPINOSA;** | § |
| **BILL PURSLEY;** | § |
| **JOHN DOE #1, #2, #3, #4, #5, #6, #7, #8** | § |
| **INDIVIDUALLY, AND** | § |
| **IN THEIR OFFICIAL CAPACITIES** | § |
| **AS POLICE OFFICERS** | § |
| | § |
| **DEFENDANTS.** | § |

7-01CV-128-R

CIVIL ACTION NO. _____

## ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES,** Dr. Allen Zarnow, (hereinafter called Plaintiff), complaining of and about The City of Wichita Falls, Chief Ken Coglin, Major Todd, Lt. J. Cummings, Sgt. Roger Kendall, Sgt Kisinger, Officer Bobby Dilbeck, Officer Dennis Keithler, Officer Rick Espinosa Officer Bill Pursley, eight unidentified officers, individually, (John Doe #1-8) for cause of action would show unto the Court the following:

### I. PRELIMINARY STATEMENT

This is an action of law to redress the deprivation under color of statute, custom, or usage of a right, privilege, and immunity secured to Plaintiff, Dr. Allen Zarnow, brought pursuant to 42

U.S.C. Sections 1983 and 1988, and the Second, Fourth, Fifth, Sixth, and Fourteenth Amendments

to the United States Constitution; Article I, Sections 9, 10, 17, 19, 23 of the Texas Constitution and

under the common laws of the State of Texas. Plaintiff alleges the Defendants, individually and

jointly deprived Plaintiff of his liberty and property, his rights to privacy, his right to bear arms, his

right to be free from unreasonable search and seizure, his right to be free from duress and malicious

prosecution, as well as his right to procedural due process and equal protection.

## II.   PARTIES AND SERVICE

1.      Plaintiff, Dr. Allen Zarnow (Dr. Zarnow), brings this action individually. Plaintiff is a white

male citizen of the United States and resides at 4500Ridgemount, Wichita Falls, Wichita County,

Texas.

2.      Defendant, **City of Wichita Falls** (City), is a municipal government unit within the State

of Texas and may be served with citation by serving its City Secretary, Lydia Torres, at P.O.

Box 1431, Wichita Falls, Texas 76307.

3.      Defendant, **Ken Coughlin** (Coughlin), is an individual and full time Chief of Police,

employed by the Wichita Falls at the time of the incident complained of herein. Defendant,

Coughlin is sued in his individual capacity and in his capacity as an agent, servant and

employee of the Wichita Falls Police Department and the City of Wichita Falls, Texas.

Defendant, Coughlin, may be served with citation at his place of employment, 610 Holliday,

Wichita Falls, Wichita County, Texas 76301.

4.      Defendant, **Major Todd** (Todd), is an individual and full time police officer, employed by

the Wichita Falls Police Department at the time of the incident complained of herein.

Defendant, Todd is sued in his individual capacity and in his capacity as an agent, servant

and employee of the Wichita Falls Police Department and the City of Wichita Falls, Texas.

Defendant, Todd, may be served with citation at his place of employment, 610 Holliday, Wichita Falls, Wichita County, Texas 76301.

5.      Defendant, **Lt. J. Cummings** (Cummings), is an individual and full time police officer, employed by the Wichita Falls Police Department at the time of the incident complained of herein. Defendant, Cummings is sued in his individual capacity and in his capacity as an agent, servant and employee of the Wichita Falls Police Department and the City of Wichita Falls, Texas. Defendant, Cummings, may be served with citation at his place of employment, 610 Holliday, Wichita Falls, Wichita County, Texas 76301.

6.      Defendant, **Sgt. Roger Kendall** (Kendall), is an individual and full time police officer, employed by the Wichita Falls Police Department at the time of the incident complained of herein. Defendant Kendall is sued in his individual capacity and in his capacity as an agent, servant and employee of the Wichita Falls Police Department and the City of Wichita Falls, Texas. Defendant, Kendall, may be served with citation at his place of employment, 610 Holliday, Wichita Falls, Wichita County, Texas 76301.

7.      Defendant, **Sgt. Kisinger** (Kisinger), is an individual and full time police officer, employed by the Wichita Falls Police Department at the time of the incident complained of herein. Defendant Kisinger is sued in his individual capacity and in his capacity as an agent, servant and employee of the Wichita Falls Police Department and the City of Wichita Falls, Texas. Defendant, Kisinger may be served with citation at his place of employment, 610 Holliday, Wichita Falls, Wichita County, Texas 76301.

8.      Defendant, **Bobby Dilbeck** (Dilbeck), is an individual and full time police officer, employed by the Wichita Falls Police Department at the time of the incident complained of herein. Defendant Dilbeck is sued in his individual capacity and in his capacity as an agent, servant

and employee of the Wichita Falls Police Department and the City of Wichita Falls, Texas. Defendant, Dilbeck may be served with citation at his place of employment, 610 Holliday, Wichita Falls, Wichita County, Texas 76301.

9.     Defendant, **Dennis Keethler** (Keethler), is an individual and full time police officer, employed by the Wichita Falls Police Department at the time of the incident complained of herein. Defendant Keethler is sued in his individual capacity and in his capacity as an agent, servant and employee of the Wichita Falls Police Department and the City of Wichita Falls, Texas.  Defendant, Keethler may be served with citation at his place of employment, 610 Holliday, Wichita Falls, Wichita County, Texas 76301.

10.    Defendant, **Rick Espinosa** (Espinosa), is an individual and full time police officer, employed by the Wichita Falls Police Department at the time of the incident complained of herein.  Defendant Espinosa is sued in his individual capacity and in his capacity as an agent, servant and employee of the Wichita Falls Police Department and the City of Wichita Falls, Texas.  Defendant, Espinosa may be served with citation at his place of employment, 610 Holliday, Wichita Falls, Wichita County, Texas 76301.

11.    Defendant, **Bill Pursley** (Pursley), is an individual and full time police officer, employed by the Wichita Falls Police Department at the time of the incident complained of herein. Defendant Pursley is sued in his individual capacity and in his capacity as an agent, servant and employee of the Wichita Falls Police Department and the City of Wichita Falls, Texas. Defendant, Pursley may be served with citation at his place of employment, 610 Holliday, Wichita Falls, Wichita County, Texas 76301.

12.    Defendants, **Officers John Doe # 1, 2, 3, and 4** have yet to be identified by name. However, Officers John Doe # 1, 2, 3, and 4 are individuals and full time police officers,

employed by the Wichita Falls Police Department at the time of the incident complained of herein. Defendants John Doe # 1, 2, 3, and 4 are sued in their individual capacities and in their capacities as agents, servants and employees of the Wichita Falls Police Department and the City of Wichita Falls, Texas.   Defendants, John  Doe # 1, 2, 3, and 4 will be identified through Discovery. After such identification, Defendants, John Doe # 1, 2, 3, and 4 will be served with citation at their place of employment, 610 Holliday, Wichita Falls, Wichita County, Texas 76301.

13.     Defendants, **Officer John Doe # 5, 6, 7, and 8** have yet to be identified by name. However, Officers John Doe # 5, 6, 7, and 8 are individuals and full time police officers, employed by the North Central Texas Narcotics Task Force at the time of the incident complained of herein. Defendants John Doe # 5, 6, 7, and 8 are sued in their individual capacities and in their capacities as agents, servants and employees of the North Central Texas Narcotics Task Force and the City of Wichita Falls, Texas.   Defendants, John  Doe # 5, 6, 7, and 8 will be identified through Discovery. After such identification, Defendants, John Doe # 5, 6, 7, and 8 will be served with citation at their place of employment, 4515 Jacksboro Highway, Wichita Falls, Wichita County, Texas 76302.

### III.   JURISDICTION

14.     The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343(3), this being an action authorized by law to redress the deprivation under color of state law, statute, custom, and usage of a right, privilege, and immunity secured to Plaintiff by to the Constitution of the United States and the Texas State Constitution.

### IV.   CONDITIONS PRECEDENT

15.     All conditions precedent have been performed or have occurred.

---

## V. VENUE

16.    This action properly lies in the Northern District of Texas, Wichita Falls Division pursuant to 29 U.S.C. Section 1391(b), because the claims arose in this judicial district.

17.    This Civil Rights Action is also brought pursuant to 42 U.S.C. § 1983 for the redress of Civil Rights and Article 1 § 9, 18 & 19 of the Texas Constitution and § 101.001 of the Texas Civil Practices and Remedies Codes to redress the deprivation of rights and privileges and immunities guaranteed to the Plaintiff.  Defendant, City of Wichita Falls' place of operation is in Wichita County, Texas. Defendant Officers Chief Ken Coughlin, Major Todd, Lt. J. Cummings, Sgt. Roger Kendall, Sgt Kisinger, Officer Bobby Dilbeck, Officer Dennis Keethler, Officer Rick Espinosa Officer Bill Pursley, and other unknown officers, are employed by Defendant, City of Wichita Falls, which is located in Wichita County, Texas.  In addition, Defendant Officers,  Chief Ken Coughlin, Major Todd, Lt. J. Cummings, Sgt. Roger Kendall, Sgt Kisinger, Officer Bobby Dilbeck, Officer Dennis Keethler, Officer Rick Espinosa Officer Bill Pursley, and the other unknown officers, all reside in the territorial bounds served by the Wichita Falls Division of the Northern District of Texas.  Therefore, jurisdiction and venue are proper in Wichita Falls, Wichita County, Texas.

## VI. FACTS

18.    Dr. Allen Zarnow M.D. a white male of Jewish faith, is a well respected medical doctor and was a practicing partner with the Clinic's of North Texas for approximately fifteen years.  His private office was located in the clinic at 1518 10th Street,  Wichita Falls, Texas.

19.    Dr. Zarnow, is also an ardent collector of weaponry and has acquired a very large array of weapons and ordinance over several years. ***All** **legally purchased and registered with the appropriate governmental agencies.***

20.    Over the years, Dr. Zarnow had many of the collectable weapons and ammunition delivered

to his office,  because there was no one at home to accept them from the delivery service. Dr. Zarnow did not keep explosives of a mercurial nature in his office. Dr. Zarnow, like many other doctors in the clinic, had weapons in his his office. Dr. Zarnow kept his office locked up and even prohibited janitorial person from entering the office when he was not there.

21.     On or about July 1, 1999, Dr. Zarnow  started his summer family vacation to Chicago. Before he left, Dr. Zarnow went by his office to secure  weapons, ammunition,  incendiary items which had been delivered to his office. When Dr. Zarnow left, his office, the drawer to his desk and his file cabinets were all locked.

22.     On July 8, 1999, Dr. Zarnow's nurse, for unknown reasons entered into his office. While sitting at his desk, the nurse kicked something under his desk. His nurse looked under the desk and saw a handgun, bullets and a gun magizine. She then began prying into his closed desk and discovered more bullets. Dr. Zarnow's nurse then left the office, locking the door behind her. She went to her supervisor and told her what she had discovered. The supervisor reported the nurse's discovery to James Resendez, C.E.O. for the Clinics of North Texas..

23.     During the morning hours of July 13, 1999, one day before Dr. Zarnow's scheduled date to return to work, Resendez told Dr. Zarnow's nurse and her supervisor "look around" in Dr. Zarnow's office. They went into Dr. Zarnows office and searched his desk. They found guns, blasting caps and packaged cannon fuses in his desk drawer which was locked. They then reported their discovery to Resendez who in turn contacted the Clinic's legal department.

24.     Later that day, a representative from the Clinics of North Texas contacted the Fort Worth office of Alcohol Tobacco & Firearms (ATF). Someone from ATF  called the Wichita Falls Fire Department (WFFD) and asked the fire department to go to Dr. Zarnow's office to see what property might be in the office.

25.     At about 4:00 P.M. on July 13[th,] the WFFD dispatched a unit to Dr. Zarnow's office on a non-emergency call. WFFD firemen entered Dr. Zarnow's office and searched his desk and found blasting caps and fuses.  WFFD then called the Wichita Falls Police Department (WFPD). WFPD began investigating this situtation as a "bomb threat."

26.     Without a warrant or consent of Dr. Zarnow, several responding officers searched Dr. Zarnow's office. WFPD Sgt Kendall arrived at the scene and as ranking officer at the scene took charge of the sitution. After several people wandered in and out of Dr. Zarnow's office, Kendall ordered that "crime scene log" be started. Over the next six hours, people entered and left Zarnow's office more than 35 times.

27.     Criminal Investigation Section (CIS)Detective Keethler, arrived at the scene and took Kyle to the police station and conducted a recorded interview with her. Kyle told the detectives that Zarnow's hobby was gun collecting. Kyle told Keethler that she discovered the item's in Zarnow's desk while it was being repaired.

28.     At approximately 5:40 P.M. CIS Detective Dilbeck arrived at the scene and began his investigation.

29.     The WFPD contacted ATF, FBI and Customs agents who came to the scene and also toured Dr. Zarnow's office, searched his desk, and took photographs.

30.     Based on incorrect, but reasonable belief that blasting-caps were an "explosive device," WFPD officers incorrectly assumed that Dr. Zarnow was unlawfully possessing prohibited weapons. Based on this inaccurate, but reasonable belief,  Dilbeck obtained a search warrant for Dr. Zarnows locked filing cabinets. In the search of the file cabinet, Officers recovered a handgun, ammunition, and a knife mistakenly described as a "switchblade." Although the search warrant was not signed a Judge until after 8:00 P.M., the search and seizure records submitted by Officer Pursley proves that

the search was conducted at 6:00 P.M.

31.     While Dibeck was preparing his affidavit for a search of Dr. Zarnows file cabinets, CIS Detective Kyle Collier was preparing an affidavit to obtain a search warrant of Dr. Zarnows home which was based solely on the same reasonable, but incorrect assumption that Dr. Zarnow was unlawfully in possession of prohibited weapons. At about 8:00 P.M. a Magistrate Judge issued a Search Warrant for Dr. Zarnows residence.

32.     At 6:30 P.M. Tactical officers were dispatched to Dr. Zarnow's home at 4500 Ridgemount to surround the house and keep surveillance on it and wait for further instructions. During their surveillance they discovered that Dr. Zarnow was home. Tactical officers relayed this information to CIS Detectives at the station.

33.     CIS Detectives made telephone contact with Dr. Zarnow and asked that he walk outside with his hands above his head. Dr. Zarnow knew that he had not violated any crime and willingly complied with the officers request.

34.     Tactical Officers made contact with Dr. Zarnow outside his home where he was frisked for weapons. Sgt. Huffer requested that they step back into the house to avoid public view and Dr. Zarnow complied. Dr. Zarnow told the officer that he had two loaded guns in the house and two locked gun safes. The officers made a visual search of the house, secured the guns and made sure that the safes were locked.

35.     Officers told Dr. Zarnow that he was not under arrest, but asked Dr. Zarnow to go with them to his office to identify thing that were found in his office. Dr. Zarnow agreed to go with the officers. However, Dr. Zarnow was locked into the back of a patrol and taken to the police station for questioning by CIS and ATF agents. Other Tactical officers remained on the scene outside Dr. Zarnow's house.

36.    At the police station, Dr. Zarnow was interrogated by Det. Dilbeck and ATF Agent Sellers. Dr. Zarnow answered their questions and informed them that he had all of the necessary paperwork to possess and own everything that the officers had found. Agent Sellers told Dr. Zarnow that she needed to inspect the paperwork and asked him to produce it. Dr. Zarnow told them that the papers were locked up at his home.

37.    While at the station, Dr. Zarnow requested to be allowed call his Attorney Bob Estrada. Chief Coughlin ordered that Dr. Zarnow was not allow to make any calls "especially to Bob Estrada".

38.    Det. Dilbeck and Agent Sellers took Dr. Zarnow back to his house where he consented to allow only Agent Sellers into his home for the sole purpose of inspecting his collection and the documents which allowed him to possess these fire arms. However, when Dr. Zarnow and Agent Sellers entered the house, Det Dilbeck and other officers John Doe #1-#4 followed them into the house. While Agent Sellers inspect the paperwork, WFPD officers began playing with Dr. Zarnow's collection. WFPD officers then began roaming through the house searching each room.

39.    Although the officers told Dr. Zarnow that he was not under arrest and had not read him a *"Miranda warning"*, he began to feel uncomfortable with the officer's conduct. He managed to get to a phone and called Attorney Bob Estrada's office. Dr. Zarnow left a recorded message for the lawyer to call him.

40.    Once Agent Sellers determined that Dr. Zarnow's paperwork was in order and that he was lawfully in possession of the otherwise prohibited weapons, Dr. Zarnow asked that the officers discontinue their search and leave his home. Det. Dilbeck responded by telling Dr. Zarnow that they did not need his consent to search because they had a search warrant. The officers executed the search knowing that "probable cause," basis for the search warrant of "possession of a prohibited

weapon," was now defunct.

41.    From this point forward, the WFPD knew that Dr. Zarnow was not violating any federal or state laws. However, pursuant to the orders and direction of Chief Coughlin, and under the supervision of Lt. Cummings, Sgt. Kendall and Sgt Kisinger, the officers maliciously pursued with relentless vigor to prosecute Dr. Zarnow with reckless disregard for his constitutionally protected rights.

42.    The officers ordered Dr. Zarnow to set on his couch while they continued their search. Dr. Zarnow told the officers that he was diabetic and had a heart conditionand that he was feeling ill and needed to check his blood sugar level. However, during the search of the house one of the officers stepped on Dr. Zarnow's glucometer and broke it.  For several hours Dr. Zarnow was forced to sit on his couch and not allowed to lay down. Dr. Zarnow had missed eating dinner and the officers refused to allow him to eat anything while they searched his home.

43.    Meanwhile, Attorney Bob Estrada had telephoned Dr. Zarnow's home. WFPD officers answered the phone and on orders from Chief Coughlin, refused to allow Dr. Zarnow to talk to his attorney. After hours of searching Dr. Zarnow's home, he was taken to the police station and further questioned without the assistance of his attorney. It was not until the afternoon of July 14, 1999, that Dr. Zarnow was given the opportunity to talk with his Attorney.

44.    When Mr. Estrada first saw Dr. Zarnow, in a holding room at the police station, it was apparent to Estrada that Dr. Zarnow was very ill. Dr. Zarnow clothes were drenched with sweat and he was woozy. Dr. Zarnow told Estrada that he was a diabetic, had not eaten, and needed his blood sugar checked. Estrada, who was also a diabetic, knew of the dangers of not eating or keeping the blood sugars regulated, immediately asked the officers to receive medical attention for Dr. Zarnow. Estrada was told that Dr. Zarnow was going to be transported to the County to be arraigned and he

would receive treatment there. Estrada called his secretary to meet him at the County and to bring his glutometer, insulin, and some orange juice. When they arrived at the County Estrada was not allowed to give anything to Dr. Zarnow so that he could treat himself. More than two hours had passed before Dr. Zarnow received medical attention.

45.     During Dr. Zarnow's interrogation, he told officers that he had a lake house in Nocona, Texas where he had more of his collections. Officers told Dr. Zarnow that they intended to search his lake house. Dr. Zarnow gave officers the combination to the locks at this property so that they would not damage his property gaining entry to his lake house.

46.     On July 14, 1999, Det. Dennis Keethler signed an affidavit for the arrest of Dr. Zarnow. In his affidavit Keethler made the false claim that;

> *"... Zarnow has expressed his objections to the recent hospital mergers and has made comments that these facilities could easily be blown up. Zarnow has admitted that he builds bombs and rockets and that he travels to an unknown location in Oklahoma to detonate these devices."*

This statement was made with reckless regard for the truth with the intent to mislead the magistrate in issuing a warrant for Dr. Zarnows arrest.

47.     Additionally, Det. Keethler intentionally withheld information from the magistrate that Dr. Zarnow was a lawful collector of weapons and had all of the proper licenses, permits, and receipts necessary for him to legally possess the "prohibited weapons".

48.     Dr. Zarnow was jailed for "possession of prohibited weapons" and bond was set at $500,000.00.

49.     On July 14, 1999, North Texas Narcotics Task Force Officer Rick Espinoza signed a probable cause affidavit for a search warrant for Dr. Zarnow's lake house. In his affidavit, Espinosa made the false claim, based on third hand information that;

> *"... Zarnow told her no numerous occasions that he was unhappy that Wichita General Hospital and Bethania Hospital's had merged and that he wanted to blow them up."*

This statement was made with reckless regard for the truth with the intent to mislead the magistrate in issuing a search warrant for Dr. Zarnow's lake house. That same day, Espinoza and John Does #5 through#8 searched the lakehouse and seized many items, some of which were never returned to Dr. Zarnow. Dr. Zarnow was legally in possession of everything that was seized and officers knew that Dr. Zarnow had the legal right to possess the items.

50.     In the days that followed, it became clear to the WFPD that they did not have the big criminal offender that they assumed they had. In a desperate attempt to save face, in light of the massive publicity over this grossly opressive misuse of police powers, the WFPD sought to search Dr. Zarnow's home and lake house again in order to find anything in which to charge Dr. Zarnow.

51.     On July 16, 1999, officers executed search warrants on Dr. Zarnow's home and lakehouse. Again a number of items were taken from both locations but none, of the items were evidence of any crime and were legally possessed by Dr. Zarnow.

52.     In each search listed above, officers seized hundreds of items from Dr. Zarnow including large sums of cash, gold coins, jewelry including wedding bands, and other items which the officers had no legitimate reason for taking. Many of these items were never returned to Dr. Zarnow. In the return of some of the property taken it was discovered that inventory list had items listed that Dr. Zarnow never owned or possessed. Some property was returned to Dr. Zarnow that was never listed on any inventory list and a number of items listed were either lost stolen or destroyed.

53.     Dr. Zarnow was no-billed by the Wichita Grand Jury and Montegue County prosecutor declined to bring any charges against Dr. Zarnow.

## Count I

54.     Dr. Zarnow's right to own and possess firearms protected by the Second Amendment of the United States Constitution and Artical I, Section 23 of the Texas Constitution were violated by the City and its officers when they unlawfully seized his firearms, failed to properly catalog the firearms seized; failed to provide proper storage for the firearms to prevent damage, distruction misplacement, loss or theft; and their failure to promptly return firearms and other property after Dr. Zarnow was cleared from all charges.

## Count II

55.     The actions of the Defendants were done intentionally, willfully and/or with deliberate indifference to or reckless disregard for the rights secured to him under the United States, with knowledge of the consequences of their acts and omissions, to wit: the acts of physical and psychological neglect clearly reflected knowledge on the part of Defendants that harmful and offensive consequences would occur.  Moreover, the failure of the other Defendants to this action, including defendant Coughlin, adequately to intervene, investigate or train the officer in the care of diabetic persons in their custody reflected deliberate indifference of Plaintiff's welfare and caused him injuries.

56.     The defendants' misconduct totally disregarded the rights of substantive due process guaranteed by the Fourteenth Amendment, giving rise to claims under 42 U.S.C. s. 1983 for compensatory damages, including pain and suffering against the individual Defendants in an amount not less than $500,000.00, and for punitive damages in amounts to be awarded by the jury.

## Count III.

57.     The defendants' acts of failing to provide timely medical care was shocking and outrageous, was undertaken with the intent to cause serious emotional harm, and did cause same, especially in

light of Defendants' knowledge that Plaintiff had a history of hart problems and diabetes. Subsequent to Dr. Zarnow's, arrest Defendant's publically compared Dr. Zarnow to the "Una bomber" and Oklahoma City terrorist Timothy Mc Vey. These actions give rise to a claim for relief in damages for intentional infliction of emotional harm against the individual Defendants in the amount of $1,000,000.00 in actual damages including pain and suffering and dignitary harms, and for punitive damages in amounts to be determined by the jury.

Count IV

58.   Dr. Zarnow's right to be free from unreasonable search and seizure protected by the Fourth Amendment of the United States Constitution and Artical I, Section 9 of the Texas Constitution were violated by the City, because it has a policy and practice of obtaining a search warrant after conducting searches and obtaining such warrants on false, inaccurate, or overstated information from unreliable or untrustworthy sources resulting in fictious probable cause.

59.   Dr. Zarnow's right to be free from unreasonable search and seizure protected by the Fourth Amendment of the United States Constitution and Artical I, Section 9 of the Texas Constitution were violated by the officers Dilbeck and John Does #1 through #4, who searched his home on July 13, 1999. Even though the officers obtained a search warrant where "probable cause" was based on the assumption that Dr. Zarnow was in unlawful possession of a prohibited firearm, their search and seizure was unreasonable after learning that Dr. Zarnow was in compliance with the law rendering their original probable cause invalid.

60.   Dr. Zarnow's right to be free from unreasonable search and seizure protected by the Fourth Amendment of the United States Constitution and Artical I, Section 9 of the Texas Constitution were violated by the subsequent searches of his home and lakehouse on July 16, 1999. The search warrant probable cause affidavits were false and misrepresented evidence in reckless disregard to Dr.

Zarnow's constitutional rights.

61.     Dr. Zarnow's right to be free from unreasonable search and seizure protected by the Fourth Amendment of the United States Constitution and Artical I, Section 9 of the Texas Constitution were violated by not  providing medical assistance or allowing Dr. Zarnow, a diabetic to treat himself; by forcing him to sit on his couch for hours and not allowing him to lay down and rest.

Count IV

62.     Dr. Zarnow's Fifth Amendment rights were violated by the City's failure to justly compensate Dr. Zarnow for property taken from him by the police and not returned.

63.     Dr. Zarnow's Fifth Amendment rights were violated by officers failure to advise him of his right to remain silent when they told him that he was not under arrest when in fact the officer had already sworn in affidavits for the search warrants that he was in violation of the law.

Count V.

64.     Dr. Zarnow's Sixth  Amendment rights were violated by Defendants for refusing to allow Dr. Zarnow to talk with his lawyer.

**V.  Conclusion**

That at all times herein mentioned, Plaintiff, Dr. Allen Zarnow was and still is a citizen of the United States of America, residing in the County of Wichita, State of Texas.

That at all times herein mentioned, the City of Wichita Falls was, and still is the employer of police personnel named as defendants herein.

That at all times herein mentioned, Defendants, were and still are officers in the Wichita Falls police department, acting in their official capacities.

That at all times herein mentioned, Defendants were acting under color of law, that is, under color of the constitution, statutes, laws, rules, regulations, customs and usages of the State of Texas.

That at all times herein mentioned, Defendants, separately and in concert with each other, engaged in acts and omissions which constituted deprivations of the rights, privileges and immunities of the Plaintiff. While these acts were carried out under color of law, after the discovery that Dr. Zarnow was legally in possession of the firearms, they had no justification or excuse in law, and were instead gratuitous, illegal, improper and unrelated to any activity in which law enforcement officers may appropriately and legally engage in the course of protecting persons and property or ensuring civil order.

That at all times herein mentioned, each of the defendants had the power and duty to restrain the other defendants and prevent them from violating the law and rights of the Plaintiff. Each of the defendants failed and refused to perform that duty, and thereby became a party to the injuries inflicted upon the Plaintiff.

The aforesaid searches of the plaintiff were unreasonable, intrusive and intended to harass and harm the plaintiff.

Solely as a result of all the foregoing, Plaintiff, Dr. Allen Zarnow was deprived of his freedom for a considerable period of time, suffered loss of income past and future, severe emotional trauma and injury past and future, was subjected to great fear and terror and personal humiliation and degradation, and has been caused to fear repetition of the unlawful conduct by the defendants or by other police officers.

## VI. DAMAGES

As a direct and proximate result of the violations asserted above, Plaintiff suffered the following injuries and damages:

a.    medical expenses in the past and future

b.    loss of employment, income, and benefits in the past and future

c.    physical pain and mental anguish

d.    property damage

## VII. PUNITIVE DAMAGES

The conduct of the defendants demonstrated conscious indifference toward the rights of the plaintiff. The intentional, malicious, and willful nature of such conduct by Defendants, and the conscious disregard of Plaintiff's rights and welfare, supports the imposition of punitive damages.

## VIII. ATTORNEY'S FEES

It was necessary for Plaintiff to hire the undersigned attorney to file this lawsuit. Upon judgement, Plaintiff is entitled to an award of attorney's fees and costs under 42 U.S.C. § 1988.

## IX. JURY DEMAND

Plaintiff, Dr. Zarnow respectfully requests trial by jury.

## X. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Dr. Allen Zarnow prays that Defendants be cited to appear and answer herein, and that upon final hearing hereof, Plaintiff receive judgment of and from Defendants, both jointly and severally, on each cause of action as follows:

a. compensatory damages in an amount which this Court shall consider to be just and fair;

b. punitive and exemplary damages in an amount which this Court shall consider to be just and fair;

c. costs of suit, including attorney's fees in an amount which this Court shall consider to be just and fair;

d. prejudgement and post judgement interest;

e. together with costs and disbursements of this action, and such other and further relief which Plaintiff may show himself to be justly entitled.

Respectfully submitted,

THE LAW OFFICES of
RICKEY G. BUNCH
Post Office Box 8232
Wichita Falls, Texas 76307
(940) 322-6611 Telephone
(940) 322-3849 Facsimile

BY: _____
        Rickey G. Bunch
        State Bar No. 00792381